## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re:<br><br>KANSAS CITY UNITED METHODIST RETIREMENT HOME, INC. D/B/A KINGSWOOD SENIOR LIVING COMMUNITY,<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-41049-11-CAN |

## DEBTOR'S PLAN OF REORGANIZATION

**McDOWELL RICE SMITH & BUCHANAN, P.C.**

*/s/Jonathan A. Margolies*

Jonathan A. Margolies    MO Bar #30770
605 W. 47th Street
Suite 350
Kansas City, Missouri 64112
Tel: (816) 753-5400
Fax: (816) 753-9996
Email: jmargolies@mcdowellrice.com
ATTORNEYS FOR DEBTOR

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **SECTION 1. DEFINITIONS AND INTERPRETATION** | | **5** |
| 1.1 | *Definitions.* | 5 |
| 1.2 | *Interpretation, Application of Definitions and Rules of Construction.* | 16 |
| 1.3 | *Computation of Time.* | 17 |
| 1.4 | *Controlling Document* | 17 |
| **SECTION 2. ADMINISTRATIVE AND PRIORITY CLAIMS** | | **17** |
| 2.1 | *Administrative Expense Claims* | 17 |
| 2.2 | *Priority Tax Claims.* | 18 |
| 2.3 | *United States Trustee Statutory Fees* | 18 |
| **SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS** | | **19** |
| **SECTION 4. TREATMENT OF CLAIMS AND INTERESTS** | | **19** |
| 4.1 | *Other Priority Claims (Class 1).* | 19 |
| 4.2 | *Other Secured Claims (Class 2).* | 20 |
| 4.3 | *Bond Claims (Class 3).* | 20 |
| 4.4 | *General Unsecured Claims (Class 4).* | 20 |
| 4.5 | *Resident Refund Claims (Class 5).* | 20 |
| **SECTION 5. CRAMDOWN** | | **20** |
| **SECTION 6. MEANS FOR IMPLEMENTATION OF THIS PLAN** | | **21** |
| 6.1 | *Refinancing Transaction.* | 21 |
| 6.2 | *2021 Bond Documents.* | 21 |
| 6.3 | *Series 2021A Bonds* | 22 |
| 6.4 | *Series 2021B Bonds* | 22 |
| 6.5 | *Series 2021C Bonds* | 23 |
| 6.6 | *Series 2021D Bonds* | 23 |
| 6.7 | *Series 2016 Bonds* | 25 |
| 6.8 | *No Further Corporate Action* | 25 |
| 6.9 | *Continued Corporate Existence* | 26 |
| 6.10 | *Vesting of Assets in the Reorganized Debtor* | 26 |
| 6.11 | *Cancellation of Agreements, Security Interests, and Other Interests* | 26 |
| 6.12 | *Exemption from Registration Requirements; Trading of Securities.* | 27 |
| 6.13 | *Organizational Documents.* | 27 |
| 6.14 | *Exemption from Certain Transfer Taxes and Recording Fees* | 27 |
| 6.15 | *Board and Officers of the Reorganized Debtor.* | 27 |
| 6.16 | *Directors and Officers Insurance Policies* | 27 |

| | | |
|---|---|---|
| **6.17** | ***Other Insurance Policies.*** | 28 |
| **6.18** | ***Preservation of Rights of Action*** | 28 |
| **6.19** | ***Corporate Action.*** | 28 |
| **6.20** | ***Effectuating Documents; Further Transactions*** | 29 |
| **SECTION 7. ASSUMPTION AND REJECTION OF Executory Contracts** | | **29** |
| **7.1** | ***Assumption and Rejection of Executory Contracts.*** | 29 |
| **7.2** | ***Inclusiveness.*** | 29 |
| **7.3** | ***Cure of Defaults.*** | 30 |
| **7.4** | ***Full Release and Satisfaction.*** | 30 |
| **7.5** | ***Reservation of Rights*** | 30 |
| **7.6** | ***Nonoccurrence of Effective Date.*** | 30 |
| **SECTION 8. PROVISIONS REGARDING DISTRIBUTIONS** | | **30** |
| **8.1** | ***Timing and Calculation of Amounts to Be Distributed*** | 30 |
| **8.2** | ***Distributions by Disbursing Agent*** | 30 |
| **8.3** | ***Interest and Penalties on Claims*** | 31 |
| **8.4** | ***Manner of Cash Payment*** | 31 |
| **8.5** | ***Withholding and Reporting Requirements.*** | 31 |
| **8.6** | ***Setoff and Recoupment.*** | 31 |
| **8.7** | ***Undeliverable or Non-Negotiated Distributions*** | 31 |
| **8.8** | ***Claims Paid by Third Parties*** | 31 |
| **8.9** | ***Claims Payable by Third Parties*** | 31 |
| **8.10** | ***Applicability of Insurance Policies*** | 32 |
| **8.11** | ***Minimum Distributions*** | 32 |
| **SECTION 9. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** | | **32** |
| **9.1** | ***Allowance of Claims*** | 32 |
| **9.2** | ***Claims Administration*** | 32 |
| **9.3** | ***Claims Estimation.*** | 32 |
| **9.4** | ***Adjustment to Claims Without Objection*** | 33 |
| **9.5** | ***Time to File Objections to Claims*** | 33 |
| **9.6** | ***Disallowance of Claims*** | 33 |
| **9.7** | ***Amendments to Claims*** | 34 |
| **9.8** | ***No Distributions Pending Allowance.*** | 34 |
| **9.9** | ***Distributions After Allowance*** | 34 |

**SECTION 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** .......................................................................................................................... **34**

**10.1** *Conditions Precedent to Confirmation* ..................................................34

**10.2** *Conditions Precedent to the Effective Date* ...........................................34

**10.3** *Waiver of Conditions*. ............................................................................35

**10.4** *Effect of Failure of Conditions* .............................................................35

**SECTION 11. EFFECT OF CONFIRMATION** .......................................................................... **35**

**11.1** *General* ...................................................................................................35

**11.2** *Releases by the Debtor* ...........................................................................36

**11.3** *Releases by Holders of Claims*...............................................................37

**11.4** *Exculpation* ............................................................................................39

**11.5** *Discharge of Claims and Interests* ........................................................40

**11.6** *Injunction* ...............................................................................................40

**11.7** *Binding Nature of Plan*...........................................................................41

**11.8** *Protection Against Discriminatory Treatment*........................................41

**11.9** *Preservation of Privilege and Defenses*..................................................41

**11.10** *Injunction Against Interference with Plan* .............................................41

**11.11** *Release of Liens* .....................................................................................42

**SECTION 12. MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN** ............... **42**

**12.1** *Modification and Amendments* ...............................................................42

**12.2** *Effect of Confirmation on Modifications*................................................42

**12.3** *Revocation or Withdrawal of this Plan* ..................................................42

**SECTION 13. RETENTION OF JURISDICTION** ...................................................................... **43**

**SECTION 14. MISCELLANEOUS PROVISIONS** ...................................................................... **44**

**14.1** *Section 1125(e) Good Faith Compliance* ...............................................44

**14.2** *Substantial Consummation* ....................................................................44

**14.3** *Closing of the Chapter 11 Case* .............................................................44

**14.4** *Plan Supplement* ....................................................................................44

**14.5** *Further Assurances*................................................................................45

**14.6** *Exhibits Incorporated* ............................................................................45

**14.7** *Inconsistency*..........................................................................................45

**14.8** *No Admissions*........................................................................................45

**14.9** *Reservation of Rights*.............................................................................45

**14.10** *Successors and Assigns*..........................................................................45

**14.11** *Entire Agreement* ...................................................................................45

**14.12** *Notices* .....................................................................................................................45

**14.13** *Severability*. ............................................................................................................46

**14.14** *Governing Law* ......................................................................................................46

**14.15** *Request for Confirmation* ......................................................................................46

## INTRODUCTION

Kansas City United Methodist Retirement Home, Inc., d/b/a Kingswood Senior Living Community ("Kingswood" or "Debtor") proposes this Chapter 11 Plan of Reorganization pursuant to Section 1121(a) of the Bankruptcy Code for the resolution of outstanding claims against the Debtor.

Reference is made to the *Disclosure Statement for Debtor's Plan of Reorganization* for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### 1.1  *Definitions*.

The following terms used herein shall have the respective meanings below:

*"2016 Bond Documents"* means, collectively, (i) the 2016 Indenture; (ii) that certain Loan Agreement dated January 1, 2016 between the Debtor and the 2016 Issuer; (iii) that certain Master Trust Indenture dated as of January 1, 2016 with the UMB Bank, N.A. as master trustee; (iv) that certain Deed of Trust and Security Agreement, dated as of January 1, 2016 (as supplemented and amended); (v) the Continuing Disclosure Agreement dated as of January 1, 2016 between the Debtor and the 2016 Bond Trustee as dissemination agent, (vi) the Tax Compliance Agreement dated as of January 1, 2016 among the Debtor, the 2016 Issuer and the 2016 Bond Trustee, (vii) the Master Indenture Obligation No. 1, dated January 6, 2016, issued by the Debtor, and (viii) any other document or agreement delivered as security for or relating to the Series 2016 Bonds or the Debtor's obligation under the foregoing documents.

*"2016 Bond Trustee"* means UMB Bank, N.A. as bond trustee pursuant to the 2016 Indenture.

*"2016 Indenture"* means that certain Bond Trust Indenture dated January 1, 2016 between the 2016 Issuer and the 2016 Bond Trustee.

*"2016 Issuer"* means the Industrial Development Authority of the City of Kansas City, Missouri, in its capacity as issuer pursuant to the 2016 Indenture.

*"2021 Bond Documents"* means, collectively, the 2021 MTI, 2021 Indenture, 2021 Loan Agreement, 2021 Deed of Trust and 2021 Supplemental MTI, together with any other document or agreement delivered as security for or relating to the Series 2021 Bonds or the Debtor's obligations under the foregoing documents.

***"2021 Bond Obligations"*** means the Debtor's obligations pursuant to the 2021 Bond Documents.

***"2021 Bond Trustee"*** means UMB Bank, N.A as bond trustee pursuant to the 2021 Indenture.

***"2021 Deed of Trust"*** means that certain Amended and Restated Deed of Trust and Security Agreement by the Debtor in favor of the Trustee, substantially in form attached as **Exhibit C** to the Disclosure Statement.

***"2021 Indenture"*** means that certain Bond Trust Indenture by and between the 2021 Issuer and the 2021 Bond Trustee, substantially in the form attached as **Exhibit C** to the Disclosure Statement.

***"2021 Issuer"*** means the Industrial Development Authority of the City of Kansas City, Missouri, in its capacity as issuer pursuant to the 2021 Indenture.

***"2021 Loan Agreement*** " means that certain Loan Agreement by and between the Debtor and the Issuer, substantially in the form attached as **Exhibit C** to the Disclosure Statement.

***"2021 MTI"*** means that certain Master Trust Indenture among the Debtor and the 2021 Bond Trustee, substantially in the form attached as **Exhibit C** to the Disclosure Statement.

***"2021 Supplemental MTI"*** means that certain Supplemental Master Trust Indenture No. 1 among the Debtor and the 2021 Bond Trustee, substantially in the form attached as **Exhibit C** to the Disclosure Statement.

***"Accrued Professional Compensation Claim"*** means, at any date, all accrued fees and reimbursable expenses for services rendered by a Retained Professional in the Chapter 11 Case through and including such date, to the extent such fees and expenses have not been previously paid whether under a retention order with respect to such Retained Professional or otherwise. To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered an Accrued Professional Compensation Claim.

***"Administrative Expense Claim"*** means any Claim for costs and expenses of administration pursuant to Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; (c) claims for the value of any goods received by the Debtor within twenty (20) days before the Petition Date and Allowed in accordance with Section 503(b)(9) of the Bankruptcy Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to Sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

***"Administrative Expense Claims Bar Date"*** means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court;

provided, however, that the deadline for Filing requests for payment of Administrative Expense Claims arising under Section 503(b)(9) of the Bankruptcy Code will be the Claims Bar Date.

*"Affiliate"* means, with respect to any Entity, an "affiliate" as defined in Section 101(2) of the Bankruptcy Code as if such entity were a debtor.

*"Allowed"* means, with reference to any Claim against the Debtor, a Claim (i) as to which no objection or request for estimation has been filed on or before the Claims Objection Bar Date; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or (c) pursuant to the terms of this Plan. An "Allowed Claim" shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law, other than with respect to the Bond Claims. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. Unless otherwise specified in this Plan, in Section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, the term "Allowed Claim" shall not, for purposes of Distributions under this Plan, include interest, fees (including attorneys' fees), costs or charges on such Claim from and after the Petition Date.

*"Assets"* means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to Section 541 of the Bankruptcy Code, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

*"Assumption Notice"* means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract to be assumed under the Plan pursuant to Section 365 of the Bankruptcy Code, which notice will include: (a) procedures for objecting to proposed assumptions of Executory Contracts; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

*"Assumption Schedule"* means the schedule of Executory Contracts which the Debtor will assume as of the Effective Date pursuant to the Confirmation Order.

*"Avoidance Actions"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

*"Ballot"* means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

*"Bankruptcy Code"* means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Western District of Missouri having jurisdiction over the Chapter 11 Case.

*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

*"Bar Date Order"* means the Final Order, entered by the Bankruptcy Court establishing the deadline for the filing of Proofs of Claim in the Chapter 11 Case.

*"Bond Claims"* means any Claim arising from, or related to, the 2016 Bond Documents and the Series 2016 Bonds, including any and all outstanding principal, which is owed in the aggregate amount of $56,374,112.19, plus any and all accrued interest, fees (including, without limitation, professional fees), expenses, costs and other charges payable with respect to the Series 2016 Bonds, which Claims are Allowed pursuant to the Cash Collateral Order and under the terms of this Plan.

*"Bondholder Deficiency Claim"* means the General Unsecured Claim of the holders of the Bonds for the difference between (a) the Bond Claims and (b) the value paid to the Trustee to the extent that the Bond Claims constitute Secured Claims.

*"Business Day"* means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in the State of Missouri.

*"Cash"* means cash and cash equivalents including, without limitation, checks and wire transfers.

*"Cash Collateral Order"* means any order, whether interim or final, authorizing the use by the Debtor during the Chapter 11 Case of the cash collateral of the Trustee.

*"Causes of Action"* means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, asserted or which may be asserted by or on behalf of the Debtor and/or the Estate, including: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code.

*"Chapter 11 Case"* means the Debtor's Chapter 11 case pending in the Bankruptcy Court under Case No. 21-41049-11-CAN.

*"Claim"* has the meaning set forth in Section 101(5) of the Bankruptcy Code.

*"Claims and Noticing Agent"* means Stretto in its capacity as claims and noticing agent for the Debtor.

*"Claims Bar Date"* means the deadline for filing Proofs of Claim, which unless established otherwise by Final Order of the Bankruptcy Court for a particular Claim (including Claims against the Debtor arising under Residency Agreements), will be in accordance with the Bar Date Order.

*"Claims Objection Bar Date"* means the deadline for objecting to a Claim, which will be the date that is the first Business Day following 90 days after the Effective Date, subject to extension by order of the Bankruptcy Court.

*"Claims Register"* means the official register of Claims and Interests maintained by the Claims and Noticing Agent.

*"Class"* means a class or category of Claims or Interests as classified and described in Section 3 of this Plan.

*"Collateral"* means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*"Confirmation Date"* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in the Chapter 11 Case.

*"Confirmation Hearing"* means the hearing(s) before the Bankruptcy Court on confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

*"Confirmation Order"* means the order entered by the Bankruptcy Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code and approving the Disclosure Statement and the other solicitation materials in respect of this Plan.

*"Consenting Holders"* means, collectively, holders of the Series 2016 Bonds that are parties to the Plan Support Agreement, which parties hold, collectively, over fifty percent (50%) of the Bond Claims, and (b) any holder of Series 2016 Bonds that executes a joinder to the Plan Support Agreement pursuant to its terms.

*"Creditor"* means a Holder of a Claim.

*"Cure"* or *"Cure Claim"* means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's defaults under an Executory Contract assumed by the Debtor under Sections 365 and 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to Section 365(b)(2) of the Bankruptcy Code.

*"Cure/Assumption Objection Deadline"* means the date that is 14 days after the filing of the Assumption Schedule with the Plan Supplement and service of the Assumption

Notice; <u>provided</u> that if any Executory Contract is added to the Assumption Schedule after the filing of the initial Assumption Schedule, an Executory Contract proposed to be assumed by the Reorganized Debtor is proposed to be assigned to a third party after the filing of the initial Assumption Schedule, or the third party to which an Executory Contract is proposed to be assigned changes after the filing of the initial Assumption Schedule, then the Cure/Assumption Objection Deadline with respect to such Executory Contract will be 14 days after service of the amended Assumption Schedule with such modification.

*"Debtor"* means Kingswood as Debtor and Debtor in Possession, and includes the Estate.

*"Debtor in Possession"* means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to Sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

*"Definitive Documents"* means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (i) the motion seeking authority to use cash collateral and grant adequate protection and the Cash Collateral Orders to be entered by the Bankruptcy Court approving such motion and all security documents and other loan documents in connection therewith; (ii) this Plan (including all exhibits and supplements thereto); (iii) the Disclosure Statement and the other solicitation materials in respect of this Plan; (iv) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (v) the 2021 Bond Documents and related documentation; (vi) any other exit financing contemplated by the Plan Term Sheet, and all security documents and other related loan documents; (vii) those motions and proposed court orders that the Debtor file on or after the Petition Date and seek to have heard on an expedited basis at the "first day hearing"; (viii) the documents or agreements for the governance of the Reorganized Debtor, including any membership agreements and certificates of incorporation; (ix) all management or consulting agreements of the Reorganized Debtor; (x) all agreements relating to Interests in the Reorganized Debtor, if applicable; and (xi) such other documents, pleadings, agreements or supplements as may be reasonably necessary or advisable to implement the Refinancing, and in the case of all such documents described in clauses (i) through (xi) consistent in all respects with all other terms and provision of the Plan Term Sheet, and acceptable in form and substance to the Trustee, the Consenting Holders, and the Debtor.

*"Disallowed"* means any Claim, or any portion thereof, that (a) has been disallowed by Final Order or pursuant to a settlement among the Debtor and the holder thereof; or (b) for which a proof of claim was required to be filed and that has not been filed by the Claims Bar Date and has not otherwise been deemed timely filed pursuant to a Final Order of the Bankruptcy Court. "Disallow" and "Disallowance" will have correlative meanings.

*"Disbursing Agent(s)"* means any Entity acceptable to the Debtor and the Consenting Holders in its capacity as a disbursing agent under the Plan.

*"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may

10

be altered, supplemented, modified, or amended from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

*"Distribution"* means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

*"Distribution Record Date"* means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which will be the date that the Confirmation Order is entered by the Bankruptcy Court, or such other date specified in the Confirmation Order.

*"Effective Date"* means the first Business Day selected by the Debtor, with the consent of the Trustee, on which (a) the conditions specified in Section 10 of this Plan have been either satisfied or waived in accordance with the terms of Section 10, and (b) no stay of the Confirmation Order is in effect.

*"Entity"* has the meaning set forth in Section 101(15) of the Bankruptcy Code.

*"Estate"* means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to Section 541 of the Bankruptcy Code.

*"Exculpated Party"* means, collectively, in each case in its capacity as such on and after the Petition Date: (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Consenting Holders; and (e) with respect to each of the foregoing entities in clauses (a) - (d), such Entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

*"Executory Contract"* means all contracts and leases to which the Debtor is a party that are subject to assumption or rejection under Section 365 of the Bankruptcy Code.

*"Existing Bond Obligations"* means Debtor's obligations under the Series 2016 Bonds and 2016 Bond Documents.

*"Facility"* means the continuing care retirement community owned and operated by the Debtor, known as "Kingswood Senior Living Community."

*"File," "Filed," or "Filing"* means file, filed, or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

*"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has been entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, and, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*,

new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

*"Foundation"* means the Kingswood Senior Living Community Foundation.

*"General Administrative Claim"* means any Administrative Expense Claim, other than an Accrued Professional Compensation Claim and claims for fees and expenses under 28 U.S.C § 1930(a).

*"General Unsecured Claim"* means any Claim asserted against the Debtor that is not (a) a Secured Claim, (b) a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, (c) a Bond Claim, (d) a Resident Refund Claim, or (e) an Intercompany Claim.

*"Governmental Unit"* has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

*"Holder"* means the legal or beneficial holder of a Claim or Interest.

*"Impaired"* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Section 1124 of the Bankruptcy Code.

*"Indemnification Provisions"* means each of the Debtor's indemnification obligations in place as of the Effective Date, whether in the bylaws, certificate of incorporation or formation, or other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, or otherwise, for the current directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents to the extent serving in such capacities on or after the Petition Date, with respect to services provided before or after the Petition Date.

*"Insurance Policies"* means, collectively, all of the Debtor's insurance policies.

*"Intercompany Claim"* means any Claim against the Debtor, including but not limited to, amounts owed to the Debtor's Wesley Fund and the Foundation.

*"Interest"* means the interest of any Holder in an equity security of the Debtor within the meaning of Section 101(16) of the Bankruptcy Code represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

*"Lien"* has the meaning set forth in Section 101(37) of the Bankruptcy Code.

*"Other Priority Claim"* means any Claim entitled to priority under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

*"Other Secured Claim"* means a Secured Claim other than the Bond Claims.

*"Person"* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other Entity, including, without limitation, the Debtor.

*"Petition Date"* means the date on which the Debtor commences the Chapter 11 Case.

*"Plan"* means this Chapter 11 plan of reorganization, including all appendices, exhibits, schedules and supplements hereto (including any appendices, exhibits, schedules and supplements to this Plan that are contained in the Plan Supplement), as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Plan Support Agreement.

*"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, in each case subject to the terms and provisions of the Plan Support Agreement, to be filed no later than ten (10) days prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules and the Plan Support Agreement, including: (a) the Assumption Schedule, (b) the Rejection Schedule, and (c) any other necessary documentation related to the implementation of this Plan.

*"Plan Support Agreement"* means that certain Plan Support Agreement entered into as of August 17, 2021 by and among the Debtor, the Consenting Holders, and any subsequent Entity that becomes a party thereto pursuant to the terms thereof, as amended and restated from time to time, which Plan Support Agreement is attached as **Exhibit B** to the Disclosure Statement.

*"Plan Term Sheet"* means that certain term sheet describing the key terms of a plan of reorganization for the Debtor, attached as **Exhibit 1** to the Plan Support Agreement.

*"Priority Claim"* means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claims.

*"Priority Tax Claim"* means any Claim of a Governmental Unit of a kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

*"Pro Rata"* shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless this Plan otherwise provides.

*"Professionals"* means all professionals employed in the Chapter 11 Case pursuant to Sections 327, 363 and 1103 of the Bankruptcy Code.

13

*"Proof of Claim"* means a proof of Claim filed against the Debtor in the Chapter 11 Case.

*"Refinancing"* means the refinancing of existing debt and certain other obligations of Kingswood to be implemented through this Plan and for which the principal terms are set forth in the Plan Term Sheet.

*"Refinancing Transaction"* shall have the meaning ascribed to it in the Disclosure Statement.

*"Reinstated"* or *"Reinstatement"* means, with respect to Claims and Interests, that the Claims or Interest shall be rendered Unimpaired in accordance with Section 1124 of the Bankruptcy Code.

*"Rejection Damages Claim"* means any Claim on account of the rejection of an Executory Contract pursuant to Section 365 of the Bankruptcy Code.

*"Related Persons"* means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

*"Released Parties"* means, collectively, the following Entities: (i) the Debtor, (ii) the Reorganized Debtor; (iii) the 2016 Bond Trustee; (iv) the Consenting Holders; (v) the 2016 Issuer; (vi) the 2021 Bond Trustee; (vii) the 2021 Issuer; and, (viii) with respect to each of the foregoing entities specified in clauses (i) through (vii), such Entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; provided that in each case, an Entity shall not be a Released Party if it: (a) elects to opt out of the releases contained in the Plan; or (b) timely Files with the Bankruptcy Court on the docket of this Chapter 11 Case an objection to the releases contained in the Plan that is not resolved before the Confirmation Date.

*"Releasing Parties"* means collectively, the following Entities: (i) the Debtor, (ii) the Reorganized Debtor; (iii) the 2016 Bond Trustee; (iv) the Consenting Holders; (v) the 2016 Issuer; (vi) the 2021 Bond Trustee; (vii) the 2021 Issuer; and, (viii) with respect to each of the foregoing entities specified in clauses (i) through (vii), such Entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; provided that in each case, an Entity shall be a Releasing Party only with respect to the 2016 Bond Trustee and Consenting Holders as of the Voting Deadline, if such Entity (a) elects

to opt out of the releases contained in the Plan; or (b) timely Files with the Bankruptcy Court on the docket of this Chapter 11 Case an objection to the releases contained in the Plan that is not resolved before Confirmation, such Entity shall only be a Releasing Party with respect to the 2016 Bond Trustee and Consenting Holders as of the Voting Deadline.

*"Rejection Schedule"* means the schedule of Executory Contracts which the Debtor will reject as of the Effective Date pursuant to the Confirmation Order.

*"Reorganized Debtor"* means the Debtor, as reorganized pursuant to and under this Plan on or after the Effective Date, and its successors.

*"Retained Professional"* and collectively, *"Retained Professionals"* means any Entity: (a) employed in the Chapter 11 Case under a Final Order in accordance with Section 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, under Sections 327, 328, 329, 330, 331, or 1103 of the Bankruptcy Code (other than an ordinary course professional retained under an order of the Bankruptcy Court); or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court under Section 503(b)(4) of the Bankruptcy Code.

*"Residency Agreements"* means those certain written agreements by and between the Debtor and current, former, or prospective residents of the Facility providing the terms and conditions that each independent living unit resident must abide by while residing at Kingswood, the resident's obligations regarding the payment of entrance fees, the resident's rights to a refund of such entrance fees, and other monthly charges that may be due to the Debtor during the duration of the resident's stay at the Facility.

*"Residents"* means all persons that reside at the Facility and are parties to Residency Agreements or Admission Agreements.

*"Resident Refund Claims"* means all claims for refunds of entrance fees pursuant to Residency Agreements and applicable Missouri State law that are presently due and owing as of the Effective Date.

*"Schedules"* means, collectively, the Schedules of assets and liabilities and Statements of Financial Affairs that are filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, as such schedules may be or may have been amended, modified, or supplemented from time to time.

*"Secured Claim"* means (i) any Claim that is secured by property in which the Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in Section 506(a) of the Bankruptcy Code or (ii) any Claim that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in Section 506(a) of the Bankruptcy Code, including any Claim that the Holder of which validly elects to treat as secured pursuant to Section 1111(b) of the Bankruptcy Code.

*"Series 2016 Bonds"* means, those certain revenue bonds issued by the Industrial Development Authority of the City of Kansas City, Missouri in the amount of $51,770,000.

*"Series 2021 Bonds"* means, collectively, the Series 2021A Bonds, the Series 2021B Bonds, the Series 2021C Bonds, and the Series 2021D Bonds.

*"Series 2021A Bonds"* means those certain bonds to be issued by the Industrial Development Authority of the City of Kansas City, Missouri in the amount of $5,500,000.

*"Series 2021B Bonds"* means those certain bonds to be issued by the Industrial Development Authority of the City of Kansas City, Missouri in the amount of $27,000,000.

**"***Series 2021C Bonds***"** means those certain bonds to be issued by the Industrial Development Authority of the City of Kansas City, Missouri in the amount of $4,400,000.

**"***Series 2021D Bonds***"** means those certain bonds to be issued by the Industrial Development Authority of the City of Kansas City, Missouri in the amount of $12,050,000.

*"Stretto"* means Bankruptcy Management Solutions, Inc., d/b/a Stretto.

*"Trustee"* means, together, the 2016 Bond Trustee and the 2021 Bond Trustee.

*"Unimpaired"* means, with respect to a Claim or Interest, a Class of Claims or Interests that is "unimpaired" within the meaning of Section 1124 of the Bankruptcy Code.

*"United States Trustee"* means the Office of the United States Trustee for the Western District of Missouri.

*"Voting Agent"* means Stretto in its capacity as voting agent for the Debtor.

*"Voting Deadline"* means the date set by the Bankruptcy Court by which all parties in interest must submit their votes on this Plan.

*"Voting Record Date"* shall have the meaning ascribed to such term in the Disclosure Statement.

**1.2** *Interpretation, Application of Definitions and Rules of Construction***.** Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this

Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern.

   **1.3**   ***Computation of Time***. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or Allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

   **1.4**   ***Controlling Document.*** In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, this Plan shall control, except that the 2021 Bond Documents shall control with respect to the Series 2021 Bonds. In the event of an inconsistency between this Plan and the Confirmation Order, the Confirmation Order shall control.

## SECTION 2.  ADMINISTRATIVE AND PRIORITY CLAIMS

   **2.1**   ***Administrative Expense Claims***. Subject to the provisions of Sections 328, 330(a), and 331 of the Bankruptcy Code and except to the extent that a Holder of an Allowed General Administrative Claim and the Debtor before the Effective Date or the Reorganized Debtor after the Effective Date agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash: (a) if such Allowed General Administrative Claim is based on liabilities that the Debtor incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim, on the later of the Effective Date or the date such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (b) if such Allowed General Administrative Claim is based on liabilities other than as set forth in (a) above, if such Allowed General Administrative Claim is due on or prior to the Effective Date, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than thirty (30) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Court.

   To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Court on or before the Administrative Expense Claims Bar Date. Any Administrative Expense Claim that is not asserted in accordance herewith shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of the Debtor's Assets or property, and the Holder

thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(a)     ***Accrued Professional Compensation Claims***.   All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is forty-five (45) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Court within five (5) Business Days after the date that such Claim is Allowed by order of the Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Reorganized Debtor. Any Accrued Professional Compensation Claim that is not asserted in accordance with Section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)     ***Post-Confirmation Fees and Expenses***.   Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**2.2     *Priority Tax Claims***.   Pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim in regular installments over a period not exceeding five years after the Petition Date of a total value as of the Effective Date equal to the Allowed Amount of the Priority Tax Claim commencing on the later of the Effective Date or as soon as practicable when such Claim becomes due and owing.

**2.3     *United States Trustee Statutory Fees***.   The Debtor and the Reorganized Debtor, as applicable, will pay the undisputed fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interest payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. Any disputed fees will be paid in the amount determined to be due by a Final Order.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

Except as set forth in the Plan, all Claims against and Interests in the Debtor are placed in a particular Class. The Debtor has not classified Administrative Expense Claims, Accrued Professional Compensation Claims, and Priority Tax Claims.

The following table classifies Claims against the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of the Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 of the Plan. The Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

The following table designates the Classes of Claims against the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with Section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote |
|-------|---------------------|--------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| 3 | Bond Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| 5 | Resident Refund Claims | Unimpaired | No  (Deemed to Accept) |

## SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS

**4.1**    *Other Priority Claims (Class 1)*.  This Class consists of all Allowed Other Priority Claims against the Debtor. Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtor has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtor and the Holder of the Allowed Other Priority Claim against the Debtor. Class 1 Claims are Unimpaired.

19

**4.2** *Other Secured Claims (Class 2)*. This Class consists of all Other Secured Claims against the Debtor. In full satisfaction of an Allowed Other Secured Claim, on the later of the Effective Date and the date on which the Other Secured Claim is Allowed, each Holder of an Allowed Other Secured Claim shall receive, at the sole and exclusive option of the Reorganized Debtor: (a) Cash equal to the amount of such Claim; or (b) the collateral securing its Allowed Other Secured Claim, (c) Reinstatement of its Allowed Other Secured Claim; or (d) such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code. Class 2 Claims are Unimpaired.

**4.3** *Bond Claims (Class 3)*. This Class consists of the Bond Claims against the Debtor. The Bond Claims are Allowed in the aggregate amount of $56,374,112.19. Unliquidated, accrued and unpaid fees and expenses of the Trustee and its professionals incurred through the Petition Date and not paid during the Chapter 11 Case are also part of, and shall be added to, the aggregate amount of the Bond Claims. Upon the terms and subject to the conditions set forth in the Plan, in full and final satisfaction, settlement, release, and discharge of the Bond Claims, including the Bondholder Deficiency Claim, which shall be waived upon the Effective Date. Each Holder of a Bond Claim shall receive its Pro Rata share of the Series 2021B Bonds and Series 2021D Bonds on the Effective Date or as soon as practicable thereafter. Accordingly, Class 3 Claims are Impaired.

**4.4** *General Unsecured Claims (Class 4)*. This Class consists of all General Unsecured Claims against the Debtor. Except to the extent that a Holder of an Allowed General Unsecured Claim against the Debtor agrees to a different treatment of such Claim, on the Effective Date, or as soon as reasonably practicable thereafter, the Debtor will pay an amount equal to 100% of the Allowed Amount of such Class 4 Claim, in each case subject to all defenses or disputes the Debtor may assert as to the validity or amount of such Claims. Any claims attributable to or held by the Debtor's Wesley Fund and the Foundation, two sources of donor funding of the Debtor, are waived, released and discharged by agreement of the parties. Accordingly, Class 4 Claims are Unimpaired.

**4.5** *Resident Refund Claims (Class 5)*. This Class consists of all refunds of entrance fees due and payable as the Effective Date or due and payable thereafter pursuant to Residency Agreements. In full satisfaction of an Allowed Resident Refund Claim, on the later of the Effective Date or the date on which the Resident Refund Claim becomes due and payable, each Holder of an Allowed Resident Refund Claim shall receive payment of 100% of the Allowed Amount of such Class 5 Claim in accordance with the existing Residency Agreement. Accordingly, Class 5 Claims are Unimpaired.

## SECTION 5. CRAMDOWN.

If all applicable requirements for confirmation of the Plan are met as set forth in Section 1129(a) of the Bankruptcy Code except Subsection (8) thereof, the Debtor may request that the Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, the Plan.

**SECTION 6.  MEANS FOR IMPLEMENTATION OF THIS PLAN**

      **6.1**  *Refinancing Transaction*.  On the Effective Date, the Debtor, the Reorganized Debtor or any other entities may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of refinancing, exit financing, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate.

      The Confirmation Order shall and shall be deemed to, under both Section 1123 and Section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

      **6.2**  *2021 Bond Documents*.  The Reorganized Debtor shall be authorized to enter into the 2021 Bond Documents on the Effective Date. On the Effective Date, and following the consummation of the Refinancing Transaction, the 2021 Bond Documents shall constitute legal, valid, binding, and authorized obligations of the Issuer, the Reorganized Debtor and the Trustee, as applicable, enforceable in accordance with their terms. The financial accommodations to be extended under the 2021 Bond Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the 2021 Bond Documents or that otherwise secure the Series 2021 Bonds (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the 2021 Bond Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Reorganized Debtor, the Trustee, or any of Holders of Series 2021 Bonds), having the priority set forth in the 2021 Bond Documents and subject only to such Liens and security interests as may be permitted under the 2021 Bond Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtor, and the Entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings

and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

On the Effective Date, the Reorganized Debtor shall cause the 2021 Issuer to issue the Series 2021 Bonds, the primary economic terms of which are described below.[1]

### 6.3    *Series 2021A Bonds.*

**Principal:**   $5,500,000 on the terms and conditions set forth in the 2021 Bond Documents.

**Rate of Interest and Payment Terms:**   The Series 2021A Bonds (Federally Taxable) will bear interest at a fixed rate of 10.0% per annum with the final maturity 16 years from issuance. Payments on the Series 2021A Bonds shall be: (i) interest only for the first 3 years (through FY2024) due and payable semi-annually; and (ii) principal will start amortizing beginning FY2025 over a 13 year period, and structured to level debt service.

**Final Maturity Date:**   Sixteen (16) years from the date of issuance.

**Collateral:**   The Series 2021A Bonds will be secured by a first priority lien on all assets of the Reorganized Debtor, *pari passu* with the Series 2021C Bonds.

### 6.4    *Series 2021B Bonds.*

**Principal:**   Holders of the Series 2016 Bonds will receive in exchange for such bonds Pro Rata shares of Series 2021B Tax-Exempt Bonds in the principal amount of $27,000,000.

**Rate of Interest and Payment Terms:**   Interest on the Series 2021B Bonds will accrue at a rate of 5.0% per annum with the final maturity 25 years from issuance. Payments on the Series 2021B Bonds shall be: (i) interest only for the first 13 years (through FY2034) due and payable semi-annually; and (ii) principal payments shall commence in FY2035.

**Final Maturity Date:**   Twenty-five (25) years from issuance.

**Collateral:**   The Series 2021B Bonds will be secured by a lien on all assets of the Reorganized Debtor, junior only to the liens securing the Series 2021 A Bonds and the Series 2021C Bonds but senior to the Series 2021D Bonds.

---

[1]  The information set forth in the accompanying chart is solely for summary purposes. To the extent there is any discrepancy between the information set forth in the chart and the 2021 Bond Documents, the 2021 Bond Documents, copies of which are attached hereto as **Exhibit C**, control.

### 6.5     *Series 2021C Bonds.*

**Principal:**             $4,400,000 on the terms and conditions set forth in the 2021 Bond Documents.

**Rate of Interest and Payment Terms:**     The Series 2021C Bonds will bear interest at a fixed rate of 7.5% per annum with the final maturity 25 years from issuance. Payments on the Series 2021C Bonds shall be: (i) interest only for the first 13 years (through FY2034) due and payable semi-annually; and (ii) principal shall commence in FY2035.

**Final Maturity Date:**     Twenty-five (25) years from issuance.

**Collateral:**             The Series 2021C Bonds will be secured by a first priority lien on all assets of the Reorganized Debtor, *pari passu* with the Series 2021A Bonds.

### 6.6     *Series 2021D Bonds.*

**Principal:**             Holders of the Series 2016 Bonds will receive in exchange for such bonds ratable shares of Series 2021D Capital Appreciation Bonds in the principal amount of $12,050,000.

**Rate of Interest and Payment Terms:**     Interest on the Series 2021D Bonds will accrue at a rate of 2.0% per annum. The Series 2021D Bonds shall mature 25 years from issuance. Payments on the Series 2021D Bonds shall be subordinate to the payment of the Series 2021A Bonds, Series 2021B Bonds, and Series 2021C Bonds. The Series 2021D Bonds will be payable from Excess Cash pursuant to the Distribution Waterfall, with available Excess Cash applied first to accrued interest then to principal. See IIIO.C.2.e. below.

**Final Maturity Date:**     Twenty-five (25) years after issuance.

**Collateral:**             The Series 2021D Bonds will be secured by a lien on all assets of the Reorganized Debtor, junior only to the liens securing the Series 2021A Bonds, Series 2021B Bonds, and Series 2021C Bonds.

**Distribution Waterfall under the Bond Documents.**

The Reorganized Debtor shall deposit, or cause to be deposited to the Revenue Fund (as defined in the 2021 Indenture), upon receipt thereof, all Gross Receipts (as defined in the 2021 MTI) in the form of cash, checks, or negotiable instruments, which are applied on the first (1st) Business Day of each calendar month, amounts in the Revenue Fund shall be transferred or deposited, as applicable, by the Trustee in the following order of priority (the "Distribution Waterfall"):

- First, to the Reorganized Debtor for deposit to the Operating Fund (as defined in the 2021 Indenture) the amounts necessary for the Reorganized Debtor to pay in the upcoming month: (i) budgeted operating expenses for the upcoming month, including without limitation for costs of operating, managing, maintaining and improving the Facilities, budgeted capital expenses (after funds in the Series 2021C Repair and Replacement Project Fund -as defined in the 2021 Indenture- have been fully disbursed), including costs for the refurbishment of Independent Living Units (as defined in the 2021 Indenture) as is necessary for occupancy or reoccupancy of the Independent Living Units; (ii) the refunding of Entrance Fees (as defined in the 2021 MTI); and, (iii) payments on Non-Recourse Indebtedness (as defined in the 2021 MTI) (the amount to be deposited form the Revenue Fund to the Operating Fund in any given month shall take into account any unapplied amount deposited in the Operating Fund from the Revenue Fund for such purpose in a prior month or any amount of the Remaining Series 2021A Funds (as defined in the 2021 Indenture) remaining on deposit in the Operating Fund, but excluding from the calculation of the amount to be deposited in the Operating Fund from the Revenue Fund the amount of any Excess Cash released to the Reorganized Debtor pursuant to Section 408(b)(viii)(b) of the 2021 Indenture that remains in the Operating Fund), as certified by the Reorganized Debtor (in a certificate setting forth in reasonable detail the projected application of the amount so certified) delivered to the Trustee no later than seven (7) Business Days prior to the first (1st) Business Day of such month;

- Second, to the Series 2021A Interest Account and the Series 2021C Interest Account of the Bond Fund (as such terms are defined and described in the 2021 Indenture) in an amount equal to $1/6^{th}$ of the interest due on the next interest payment date of the respective bonds;

- Third, to the Series 2021B Interest Account of the Bond Fund (as such terms are defined and described in the 2021 Indenture) in an amount equal to $1/6^{th}$ of the interest due on the next interest payment date for the Series 2021B Bonds;

- Fourth, commencing December 2024 and monthly thereafter until the Series 2021A Bonds are satisfied in full, to the Series 2021A Principal Account of the Bond Fund (as such terms are defined and described in the 2021 Indenture) in an amount equal to $1/12^{th}$ of the principal due on the next principal payment date for such bonds;

- Fifth, commencing December 2034 and monthly thereafter until the Series 2021C Bonds are satisfied in full, to the Series 2021C Principal Account of the Bond Fund (as such terms are defined and described in the 2021 Indenture) in an amount equal to $1/12^{th}$ of the principal due on the next principal payment date for such bonds;

- Sixth, commencing December 2034 and monthly thereafter until the Series 2021B Bonds are satisfied in full, to the Series 2021B Principal Account of the Bond Fund (as such terms are defined and described in the 2021 Indenture) in an amount equal to $1/12^{th}$ of the principal due on the next principal payment date for such bonds;

- Seventh, after no Series 2021C Bonds are Outstanding under the

24

2021 Indenture, to the Series 2021B Account of Debt Service Reserve Fund (as such terms are defined and described in the 2021 Indenture) the amount necessary to make the amount therein equal the Debt Service Reserve Requirement (as defined in the 2021 Indenture) for the Series 2021B Bonds; and

- Eighth, any remaining amounts (such remaining amounts referred to as "Excess Cash") after (x) application of paragraphs First to Seventh above (disregarding any such paragraph pursuant to the provisions of which application has not yet commenced) and (y) in excess of an amount equal to 100 Days Cash on Hand (as defined in the 2021 MTI), which shall continue to be held in in the Revenue Fund, shall be transferred (i) 70% of the Excess Cash to the Series 2021D Account of the Bond Fund (as such terms are defined and described in the 2021 Indenture) to pay interest due on the next Interest Payment Date (as defined in the 2021 Indenture) and then to pay principal of the Series 2021D Bonds, and (ii) 30% of the Excess Cash to the Reorganized Debtor to be spent solely on expenses related to the Facilities in accordance with Section 5.14 of the 2021 Loan Agreement.

**Additional Security for Series 2021 Bonds.**

The Bond Documents establish certain Debt Service Reserve Funds with the Trustee, subject to the Trustee's lien under the Series 2021 Bond Documents, to secure payment of the Series 2021A Bonds, the Series 2021B Bonds and the Series 2021C Bonds, respectively. The Series 2021A Debt Service Reserve Fund shall be funded in the amount of $500,000 from the proceeds of the Series 2021A Bonds, and the Series 2021C Debt Service Reserve Fund shall be funded form the proceeds of the Series 2021C Bonds in the amount of $400,000. Certain proceeds of the Series 2016 Bonds will provide an initial deposit to the Series 2021B Debt Service Reserve Fund with the balance of the Series 2021B Debt Service Reserve Requirement (to be equal to the least of 10% of the proceeds of the Series 2021B Bonds, 125% of average annual debt service on the Series 2021B Bonds and maximum annual debt service on the Series 2021B Bonds) funded from the above-reference Distribution Waterfall.

The Series 2021 Bonds also will be secured by the 2021 Deed of Trust providing a lien on real property and other assets of the Reorganized Debtor.

**6.7**     ***Series 2016 Bonds.*** The entirety of the Series 2016 Bonds will be extinguished.

**6.8**     ***No Further Corporate Action.*** The issuance of the Series 2021 Bonds for distribution under the Plan is authorized without the need for further corporate action, and all of the Series 2021 Bonds issued or issuable under the Plan shall be duly authorized and validly issued under the Plan. The Reorganized Debtor shall cause to be delivered customary legal opinions and other documents in connection with the issuance of the Series 2021 Bonds, in form and substance acceptable to the Trustee, including, without limitation, (i) the Opinion of Bond Counsel described in the 2021 Bond Documents, and (ii) a lender's title policy with respect to the real property securing the Reorganized Debtor's obligations under the 2021 Bond Documents, and the first

mortgage position of the Trustee, subject to such exceptions as are reasonably acceptable to the Trustee.

**6.9** **_Continued Corporate Existence._** Except as otherwise provided in the Plan, the Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, with all the powers of a corporation under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be under the Plan and require no further action or approval.

**6.10** **_Vesting of Assets in the Reorganized Debtor_**. Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, including the Liens and security interests granted under the 2016 Bond Documents as such Liens and security interests continue to secure the obligations related to the 2021 Bond Documents, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

**6.11** **_Cancellation of Agreements, Security Interests, and Other Interests_**. On the Effective Date, except to the extent otherwise specifically provided in the Plan, including to the extent certain of the 2016 Bond Documents continue in existence pursuant to their amendment and restatement pursuant to the 2021 Bond Documents, all notes, instruments, certificates, and other documents evidencing the 2016 Bonds, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto shall be discharged and the agents and Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder. Except to the extent certain security interests and Liens continue in existence pursuant to the 2021 Bond Documents, all existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date. Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the Effective Date, to the extent that the 2016 Bond Documents do not otherwise remain in effect pursuant to the 2021 Bond Documents, any credit document or agreement that governs the rights of any Holder of a Bond Claim shall continue in effect for purposes of (1) allowing Holders of such Allowed Claims to receive distributions under the Plan; (2) allowing and preserving the rights of the agents or representative of Holders of such Claims to make distributions on account of such Allowed Claims, as provided in the Plan; (3) preserving all exculpations in favor of the Trustee; (4) allowing the Trustee to enforce any rights and obligations owed to it under the Plan or the Confirmation Order, including the ability of the Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, to assert its charging lien, to enforce its indemnity and other rights and protections with respect to and pursuant to the 2016 Bond Documents; and (5) permitting the Trustee to appear and be heard in the Chapter 11 Case, or in any proceeding in the Court or any other court.

**6.12** *Exemption from Registration Requirements; Trading of Securities*. The offering, issuance, and distribution of Series 2021 Bonds issued under the Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act under Section 3(a)(4) of the Securities Act of 1933, as amended and under Section 1145(a)(1) of the Bankruptcy Code. Any and all Series 2021 Bonds issued under the Plan will be freely tradable under the Securities Act by the recipients thereof, subject to the requirements of the 2021 Indenture.

**6.13** *Organizational Documents*. Subject to Section 6.1 of the Plan, the Reorganized Debtor shall enter into such agreements to the extent necessary to implement the terms and provisions of the Plan.

**6.14** *Exemption from Certain Transfer Taxes and Recording Fees*. To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any Entity under, in contemplation of, or in connection with the Plan or under: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**6.15** *Board and Officers of the Reorganized Debtor*. As of the Effective Date, the members of the Board of Directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as directors and officers of the Reorganized Debtor unless otherwise disclosed in the Plan Supplement or prior to the commencement of the Confirmation Hearing, in each case subject to the ordinary rights and powers of the Board of Directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to the Plan. From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's certificate of incorporation and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

**6.16** *Directors and Officers Insurance Policies*. Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of the Debtor's Directors and Officers ("D&O") Liability Insurance Policies under Section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Court's approval of the Reorganized Debtor's foregoing assumption of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan,

Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed.

> **6.17** *Other Insurance Policies*. On the Effective Date, the Debtor's Insurance Policies in existence as of the Effective Date shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor under Section 365 of the Bankruptcy Code and Section 7.1 of the Plan. Nothing in the Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the Insurance Policies in any manner, and such insurance carriers, the insureds, and the Reorganized Debtor shall retain all rights and defenses under such Insurance Policies. The Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date. Following the Effective Date, the Debtor's Insurance Policies shall comply with all applicable covenants set forth in the 2021 Bond Documents.

> **6.18** *Preservation of Rights of Action*. In accordance with Section 1123(b) of the Bankruptcy Code but subject to the releases set forth in Section 11 of the Plan, including but not limited to the release of all Causes of Action against the Trustee and the Consenting Holders, all Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court. **Subject to the releases set forth in Section 11 of the Plan, no Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of the Plan or the occurrence of the Effective Date.**

> **6.19** *Corporate Action*. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other Entity, including: (1) assumption of Executory Contracts; (2) selection of the directors, managers, and officers for the Reorganized Debtor; (3) the execution of and entry into the 2021 Bond Documents; (4) the issuance and distribution of the Series 2021 Bonds as provided in the Plan; and (5) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in the Plan involving the company structure of the Reorganized Debtor and any company action required by the Debtor or the Reorganized Debtor, as applicable, in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor or the Reorganized Debtor, as applicable.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or the Reorganized Debtor, as applicable (including any Board Chair, Board Vice-Chair, president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof), shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (1) the 2021 Bond Documents, (2) the Series 2021 Bonds and (3) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**6.20** *Effectuating Documents; Further Transactions*.  Prior to, on, and after the Effective Date, the Debtor and the Reorganized Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the 2021 Bond Documents, and any securities issued under the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required under the Plan. All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Court.

## SECTION 7.  ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS

**7.1** *Assumption and Rejection of Executory Contracts*.  Except as otherwise provided in the Plan or in a motion filed by the Debtor before the Effective Date, each of the Executory Contracts of the Debtor, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Court, pursuant to Section 365 of the Bankruptcy Code. All existing Residency Agreements shall be assumed. The Confirmation Order may constitute an order of the Court approving the assumption of each of the Executory Contracts, all pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.

**7.2** *Inclusiveness*.  Except as otherwise provided in the Plan or agreed to by the Debtor and the applicable counterparty, each Executory Contract shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract.

**7.3**      *Cure of Defaults*.   The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter, with the amount and timing of payment of any such Cure dictated by the Debtor's ordinary course of business.

**7.4**      *Full Release and Satisfaction*.   Assumption of any Executory Contract pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract at any time before the effective date of the assumption. The foregoing provision shall not apply to and shall not impair the rights of the Holders of the Series 2021 Bonds.

**7.5**      *Reservation of Rights*.   Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder.

**7.6**      *Nonoccurrence of Effective Date*.   In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under Section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## SECTION 8.   PROVISIONS REGARDING DISTRIBUTIONS

This Section 8 is not applicable to the distributions to be made to the Holders of the Series 2016 Bonds, which shall receive their respective Pro Rata interest in the Series 2021 Bonds as provided herein.

**8.1**      *Timing and Calculation of Amounts to Be Distributed*.   Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim or Interest will receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan; provided, however, that in order to receive cash distributions Holders of Allowed Claims and Interests must properly complete and return to the Disbursing Agent an executed Internal Revenue Service Form W-9 or W-8, as appropriate. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests will be made pursuant to the provisions set forth in Section 11. The Debtor will have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

**8.2**      *Distributions by Disbursing Agent*.   Unless otherwise specifically provided for in the Plan, the Disbursing Agent(s) will make all distributions required to be made under the

Plan.  The Reorganized Debtor may act as Disbursing Agent or may employ or contract with other Entities to assist in or make the distributions required by the Plan.

**8.3**     *Interest and Penalties on Claims.*  Unless otherwise specifically provided for in the Plan, the Confirmation Order, or the 2021 Bond Documents, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, post-petition interest and penalties will not accrue or be paid on any Claims, including Other Priority Claims and General Unsecured Claims, and no Holder of a Claim will be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of the Plan.

**8.4**     *Manner of Cash Payment.*  Payments of Cash made pursuant to the Plan will be made, at the option and in the sole discretion of the Reorganized Debtor, by checks drawn on or wire transfers from a bank selected by the Reorganized Debtor.

**8.5**     *Withholding and Reporting Requirements.*  In connection with the Plan and all distributions hereunder, the Reorganized Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder will be subject to any such withholding and reporting requirements. The Reorganized Debtor will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**8.6**     *Setoff and Recoupment.*  The Reorganized Debtor may, pursuant to Sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws and subject to the terms of the 2021 Bond Documents, but will not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim, or claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or the Reorganized Debtor may assert against any Holder of an Allowed Claim, and all setoff and/or recoupment claims of the Debtor and/or the Reorganized Debtor are hereby preserved.

**8.7**     *Undeliverable or Non-Negotiated Distributions.*  All undeliverable distributions under the Plan that remain unclaimed for one year after attempted distribution will indefeasibly revert to the Reorganized Debtor. Upon such reversion, the relevant Allowed Claim will be automatically discharged and forever barred, notwithstanding any federal or state escheatment laws to the contrary.

**8.8**     *Claims Paid by Third Parties.*  To the extent a Holder receives a distribution on account of a Claim and also receives payment from a party other than the Debtor or the Reorganized Debtor on account of such Claim, such Holder must, within fourteen (14) days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

**8.9**     *Claims Payable by Third Parties.*  No distributions under the Plan will be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance

31

policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**8.10** *Applicability of Insurance Policies.*  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims will be made in accordance with the provisions of any applicable insurance policy. Notwithstanding anything herein to the contrary, nothing in this paragraph will constitute or be deemed to be a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtor or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor will anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**8.11** *Minimum Distributions.*  No distribution will be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the specific Holder of an Allowed Claim has an economic value of less than $25.00.

## SECTION 9.  PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

This Section 9 shall not be applicable to the Bond Claims, which are deemed Allowed and treated in accordance with Section 4.3 of the Plan.

**9.1** *Allowance of Claims*.  On and after the Effective Date, the Debtor or the Reorganized Debtor will retain any and all of its rights and defenses that it had with respect to any Claim that existed immediately before the Effective Date.

**9.2** *Claims Administration.*  After the Effective Date, the Reorganized Debtor will have the sole authority to: (1) File and prosecute objections to Claims, settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**9.3** *Claims Estimation.*  Before, on, or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that is either

subject to appeal or has not been the subject of a Final Order, will be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount will constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event will any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**9.4** ***Adjustment to Claims Without Objection.*** Any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. Additionally, any Claim that is duplicative or redundant with another Claim against the Debtor may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that the Debtor shall provide notice to the affected Party of such action.

**9.5** ***Time to File Objections to Claims.*** Any objections to Claims must be Filed on or before the Claims Objection Bar Date.

**9.6** ***Disallowance of Claims.*** Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, will be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such causes of Action against that Entity have been settled or the Bankruptcy Court has entered an order with respect thereto and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor, as applicable. All Proofs of Claim Filed on account of an indemnification obligation will be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of the Bankruptcy Court; provided that the Debtor shall provide notice to the affected Party of such action.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtor, any and all Proofs of Claim Filed after the Claims Bar Date will be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action,**

**order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

    **9.7**  *Amendments to Claims.* On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed will be deemed disallowed in full and expunged without further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

    **9.8**  *No Distributions Pending Allowance.* If an objection to a Claim or Interest or portion thereof is Filed, no payment or distribution provided under the Plan may be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes and Allowed Claim or Interest, unless otherwise agreed to by the Reorganized Debtor.

    **9.9**  *Distributions After Allowance.* To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) will be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent(s) will provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any post-Effective Date interest to be paid on account of such Claim.

## SECTION 10.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

    **10.1** *Conditions Precedent to Confirmation.* The Debtor shall not submit the Confirmation Order for consideration by the Court until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of the Plan:

      (a)  The proposed Confirmation Order shall be in form and substance reasonably satisfactory in all respects to the Debtor, the Trustee and the Consenting Holders; and

      (b)  The Plan the Plan Supplement (including the 2021 Bond Documents), and any schedules, documents, supplements and exhibits to any of the foregoing documents shall be, in form and substance satisfactory to the Debtor, the Trustee, and the Consenting Holders, and on the terms contemplated by the Plan Support Agreement.

    **10.2** *Conditions Precedent to the Effective Date.* The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of the Plan:

      (a)  The Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Trustee, and the Consenting

Holders, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under Section 1144 of the Bankruptcy Code;

(b)      The Plan Support Agreement shall not have been terminated, and remains in full force and effect;

(c)      On the occurrence of the Effective Date, the conditions to effectiveness of the 2021 Bond Documents shall have been satisfied or waived by the Trustee and the Consenting Holders, and the Refinancing Transaction shall have closed pursuant to the terms of the Plan Support Agreement;

(d)      The Effective Date shall be no later than the date that is ninety-seven (97) days after the Petition Date or by such later date as is agreed to by the Requisite Consenting Holders (as defined in the Plan Support Agreement);

(e)      All actions, documents, certificates, and agreements necessary to implement the Plan, including, without limitation, 2021 Bond Documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws; and

(f)      All requisite governmental authorities and third parties shall have approved or consented, to the extent required, to all actions, documents, certificates, and agreements necessary to implement the Plan.

**10.3    *Waiver of Conditions*.**  The conditions to confirmation and consummation of the Plan set forth therein may be waived in writing at any time by the Debtor, with the written consent of the Trustee, without notice to any other parties in interest or the Court and without a hearing.

**10.4    *Effect of Failure of Conditions*.**  If consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other Person in any respect.

## SECTION 11.  EFFECT OF CONFIRMATION

**11.1    *General*.**  Under Section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved under the Plan. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and any Holders of Claims and Interests and is fair, equitable and reasonable. Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and

Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Section 510 of the Bankruptcy Code or otherwise. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, Section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; provided, however, that nothing contained in the Plan shall preclude any Person or Entity from exercising their rights under and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan, including but not limited to the 2021 Bond Documents.

   **11.2**   *Releases by the Debtor.*   Pursuant to Section 1123(b) of the Bankruptcy Code, notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, including the consummation of the transactions contemplated by the Plan, on and after the Effective Date, each Released Party shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtor, the Reorganized Debtor, and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor, the Reorganized Debtor, or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, tort, contract, or otherwise, that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the 2016 Bonds, the assertion or enforcement of rights and remedies against the Debtor, the Debtor's in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between the Debtor and any non-Debtor, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Plan Support Agreement, the Disclosure Statement, the Refinancing Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Cash Collateral Order, or any other restructuring transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan Support Agreement, this Plan (including for the avoidance of doubt the plan supplement), or the 2021 Bond Documents, before or during the filing of the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of Confirmation of this Plan, the pursuit of consummation of this Plan, the

36

administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order of the Bankruptcy Court. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Refinancing Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the 2021 Bond Documents, or any Claim or obligation arising under the Plan.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under the foregoing release. Notwithstanding the foregoing, nothing in Section 11 of the Plan shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Bankruptcy Rule 9019, of foregoing Debtor release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the foregoing release is: (i) in exchange for the good and valuable consideration provided by the Released Parties including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor's release; (iii) in the best interest of the Debtor and its Estate; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to the Debtor, the Reorganized Debtor, or the Debtor's Estate asserting any Claim or Cause of Action released pursuant to the Debtor's release.

**11.3** *Releases by Holders of Claims.* **ON AND AFTER THE EFFECTIVE DATE, EXCEPT (I) FOR THE RIGHT TO ENFORCE THE PLAN OR ANY RIGHT OR OBLIGATION ARISING UNDER THE PLAN SUPPLEMENT THAT REMAINS IN EFFECT OR BECOMES EFFECTIVE AFTER THE EFFECTIVE DATE OR (II) AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR CONFIRMATION ORDER, INCLUDING THE 2021 BOND DOCUMENTS, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTOR UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EACH RELEASED PARTY WILL BE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND**

**FOREVER RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, TORT, CONTRACT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR OR THE REORGANIZED DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE 2016 BONDS, THE ASSERTION OR ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTOR, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, INTERCOMPANY TRANSACTIONS BETWEEN THE DEBTOR AND ANY NON-DEBTOR, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE PLAN SUPPORT AGREEMENT, THIS DISCLOSURE STATEMENT, THE REFINANCING TRANSACTION, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), THE CASH COLLATERAL ORDER, OR ANY OTHER RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE PLAN SUPPORT AGREEMENT, THIS PLAN (INCLUDING FOR THE AVOIDANCE OF DOUBT THE PLAN SUPPLEMENT), OR THE 2021 BOND DOCUMENTS, BEFORE OR DURING THE FILING OF THE CHAPTER 11 CASE, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OTHER THAN THE DEBTOR THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR**

**ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY REFINANCING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE 2021 BOND DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASES; (E) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASES.**

**11.4** *Exculpation.* Except as otherwise specifically provided in the Plan or the Confirmation Order, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur liability for, and each Exculpated Party will be released and exculpated from, any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with or arising out of this Chapter 11 Case, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Plan Support Agreement and related prepetition transactions, this Disclosure Statement, the Plan, the Plan Supplement, or any Refinancing Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during this Chapter 11 Case, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Case, the solicitation of votes for or the pursuit of confirmation of the Plan, the administration, funding, consummation, or distribution of property under of this Plan or any related agreement, the occurrence of the Effective Date, the issuance of securities under or in connection with the Plan, or the transactions in furtherance of any of the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under this Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan including the 2021 Bond Documents; or (b) claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**11.5** *Discharge of Claims and Interests.* To the fullest extent provided under Section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Court, distributed or retained under the Plan on account of such Claims, Interests or Causes of Action. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under Sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

**11.6** *Injunction*. **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, INCLUDING BUT NOT LIMITED TO ANY RIGHT ARISING UNDER OR RELATED TO THE 2021 BOND DOCUMENTS, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION WILL BE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH OF (I) – (V) ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR**

REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**11.7** *Binding Nature of Plan.* ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THE PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THE PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, AFFIRMATIVELY VOTED TO REJECT THE PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THE PLAN.

**11.8** *Protection Against Discriminatory Treatment*. To the extent provided by Section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under Chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

**11.9** *Preservation of Privilege and Defenses*. No action taken by the Debtor or the Reorganized Debtor in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or the Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

**11.10** *Injunction Against Interference with Plan*. Upon the Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals,

shall be enjoined from taking any actions to interfere with the Debtor's, the Reorganized Debtor's and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

        **11.11** ***Release of Liens***. Except as otherwise provided in the Plan, the Confirmation Order, the 2021 Bond Documents, including to the extent the 2021 Bond Documents amend or restate the 2016 Bond Documents, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in the Plan, the Confirmation Order, the 2021 Bond Documents, including to the extent the 2021 Bond Documents amend or restate the 2016 Bond Documents, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## SECTION 12. MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

        **12.1** ***Modification and Amendments***. The Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtor with the consent of the Trustee in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtor or the Reorganized Debtor may institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

        **12.2** ***Effect of Confirmation on Modifications***. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

        **12.3** ***Revocation or Withdrawal of this Plan***. Subject to the terms of the Plan Support Agreement, the Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw the Plan before the Effective Date. If the Debtor revokes or withdraws the Plan, or if the Confirmation Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

## SECTION 13.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, other than rights and obligations arising under the 2021 Bond Documents, including any exhibits and schedules thereto, the Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan, including, but not limited to, jurisdiction to:

(a)  allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)  decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)  resolve any matters related to: (i) the assumption or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, and cure Claims, pursuant to Section 365 of the Bankruptcy Code or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)  ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)  adjudicate, decide or resolve any matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)  adjudicate, decide or resolve any matter involving the Reorganized Debtor;

(g)  adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(h)  issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

(i)  resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

43

(j)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(l)     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(m)    consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any Court order, including the Confirmation Order;

(n)     hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

(o)     enforce all orders previously entered by the Court;

(p)     hear any other matter not inconsistent with the Bankruptcy Code; and

(q)     enter a final decree closing the Chapter 11 Case.

## SECTION 14.  MISCELLANEOUS PROVISIONS

**14.1    *Section 1125(e) Good Faith Compliance*.**  As of and subject to the occurrence of the Confirmation Date, the Debtor and its Related Persons shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

**14.2    *Substantial Consummation*.**  On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in Section 1101 and pursuant to Section 1127(b) of the Bankruptcy Code.

**14.3    *Closing of the Chapter 11 Case*.**  The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, but by no later than thirty (30) days after the Effective Date, file with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Case.

**14.4    *Plan Supplement*.**  Any exhibits or schedules not filed with the Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

**14.5** *Further Assurances*. The Debtor or the Reorganized Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, the Reorganized Debtor and all Holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**14.6** *Exhibits Incorporated*. All exhibits to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan as if fully set forth therein.

**14.7** *Inconsistency*. In the event of any inconsistency among the Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of the Plan shall govern.

**14.8** *No Admissions*. If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

**14.9** *Reservation of Rights*. Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Court shall enter the Confirmation Order and the Effective Date has occurred. None of the Plan, any statement or provision contained in the Plan or any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

**14.10** *Successors and Assigns*. The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

**14.11** *Entire Agreement*. On the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**14.12** *Notices*. All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

Kansas City United Methodist Retirement Home, Inc.,
d/b/a Kingswood Senior Living Community
Attention: Sergio del Pino, Executive Director
10000 Wornall Road
Kansas City, MO 64114
Telephone: (816) 442-3223

E-mail: delpinos@kingswoodretirementliving.com

with copies to:

McDowell, Rice, Smith & Buchanan, P.C.
Attention: Jonathan A. Margolies
605 W. 47th Street, Suite 350
Kansas City, Missouri 64112
Telephone: (816) 960-7320
Email: jmargolies@mcdowellrice.com

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Chapter 11 Case. Any such Holder of a Claim or Interest may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtor.

**14.13** *Severability*. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted; provided, however, no such alteration shall materially affect the terms of the 2021 Bond Documents without the consent of the Trustee notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.14** *Governing Law*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Missouri, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

**14.15** *Request for Confirmation*. The Debtor requests entry of the Confirmation Order under Section 1129(a) of the Bankruptcy Code and, to the extent necessary, Section 1129(b) of the Bankruptcy Code.

Dated: August 18, 2021                    Respectfully submitted,


                                          KANSAS CITY UNITED METHODIST
                                          RETIREMENT HOME, INC. D/B/A
                                          KINGSWOOD SENIOR LIVING COMMUNITY


                                          By:    */s/Ross P. Marine*
                                                 Name: Ross P. Marine
                                                 Title: Chair of the Board